UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUELINE NICHET NANCE,

   Plaintiff,

v.             Case No. 8:20-cv-507-NPM

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

_____

## OPINION AND ORDER

Plaintiff Jacqueline Nance seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 34). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

## I. Eligibility for Disability Benefits and the ALJ's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] An impairment limits someone's exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when someone's functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or the limitations meet or equal the criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.     Factual and procedural history

Nance is fifty-one years old. (Tr. 28, 113, 124). She has a college degree, and she last worked as a cook trainer. (Tr. 54, 270, 282). Nance was originally injured at work in 2010 and 2011, and she settled her workers' compensation claim in October 2013. (Tr. 241-55). Nance then filed applications for disability insurance benefits and supplemental security income in March 2012, which were denied by Administrative Law Judge Debra Boudreau on September 24, 2013. (Tr. 58-70). Nance again filed applications for both benefits in November 2013, which were denied by an ALJ on March 21, 2016. (Tr. 77-93; *see also* Tr. 98-103).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

Nance applied for disability insurance benefits for a third time on May 3, 2017. (Tr. 123, 133, 222-226). She simultaneously applied for supplemental security income, which was denied due to her spouse's income. (Tr. 209-220, 238-239). Nance only appealed her claim for disability insurance benefits. (Doc. 15 ¶ 1; Tr. 37, 104-132). Nance asserted a disability onset date of March 22, 2016, due to spinal stenosis.[5] (Tr. 105, 114). This onset date does not correspond to a particular medical event, but rather it was selected because it is the day after the previous ALJ decision denying her previous applications for benefits. (Tr. 20, 39). Nance's application was administratively denied initially on June 22, 2017, and upon reconsideration on July 17, 2017. (Tr. 104-132).

At Nance's request, ALJ Paul L. Johnston held a hearing on November 28, 2018. (Tr. 35-57, 150, 168). The ALJ issued an unfavorable decision on March 19, 2019, finding Nance not disabled from March 22, 2016, through December 31, 2016, the date last insured. (Tr. 17-29).

Nance's timely request for review by the administration's Appeals Council was denied. (Tr. 5-11). Nance then filed a Complaint on March 4, 2020 (Doc. 1), and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Docs. 20, 23).

---

[5] There appears to be a typographical error in Nance's allegation of disability due to "spinal stonogous."

### C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record.

This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Nance met the insured status requirements through December 31, 2016. (Tr. 23). At step one of the evaluation, the ALJ found Nance had not engaged in substantial gainful activity since the alleged onset date through the date last insured. (Tr. 18). At step two, the ALJ adopted the step two finding from the prior hearing because he found the medical evidence did not reflect any new impairments from the March 21, 2016 decision through the date last insured. (Tr. 23, 83). Therefore, he characterized Nance's severe impairments as:

degenerative disc disease; bilateral knee osteoarthritis; right shoulder dysfunction;

bilateral biceps tendinitis; carpal tunnel syndrome; obesity; and migraine headaches.

(Tr. 23). At step three, the ALJ determined Nance did not have an impairment or

combination of impairments that met or medically equaled the severity of an agency-

listed impairment. (Tr. 23).

> As a predicate to step four, the ALJ arrived at the following RFC:

> [T[he claimant had the residual functional capacity to perform sedentary
> work as defined in 20 CFR [§] 404.1567(a) except the claimant can climb
> ramps and stairs frequently with occasional climbing of ladders, ropes and
> scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and
> crawl. The claimant can frequently reach in all directions as well as handle,
> finger and feel. The claimant must avoid concentrated exposure to hazards
> such as machinery and heights.

(Tr. 23). At step four, relying on the testimony of the vocational expert, the ALJ

found Nance was unable to perform any past relevant work. (Tr. 27-28).

Finally, at step five, the ALJ found Nance could perform jobs that existed in

significant numbers in the national economy. (Tr. 28). As support, the vocational

expert identified three representative occupations an individual with Nance's age (46

years old on the date last insured), education (at least a high school education), work

experience and RFC could perform:

(1) Clerical Addresser, DOT 909.587-010, Sedentary, SVP 2, 54,000 jobs nationally;
(2) Telephone Order Clerk, DOT 209.567-014, Sedentary, SVP 2, 67,000 jobs nationally; and
(3) Charge Account Clerk, DOT 205.367-014, Sedentary, SVP 2, 71,000 jobs nationally.

(Tr. 28-29).[6]

## II.   Analysis

Nance's appeal presents the following issues:

(1)   whether Nance's severe migraines were properly considered;

(2)   whether Nance's tenosynovitis was properly considered;

(3)   whether the medical source opinion evidence was properly considered;

(4)   whether Nance's subjective allegations were properly considered; and

(5)   whether the evidence submitted to the Appeals Council merits remand.

(Doc. 34, pp. 13-14, 21, 41, 47, 50).

### A.   Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled—with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether Nance's severe migraines were properly considered.**

Nance argues the ALJ committed reversible error by finding Nance's migraines to be a "severe impairment" and not explaining any corresponding impact on Nance's RFC. (Doc. 34, pp. 47-49). This contention has merit, and warrants reversal.

A determination that migraines are a severe impairment means the migraines significantly limited Nance's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). Indeed, the ALJ acknowledged as much by stating that Nance's migraines "significantly limit the ability to perform basic work activities." (Tr. 23). But there is no indication that any limitations from Nance's severe impairment of migraines were included in the ALJ's residual-functional-capacity assessment.

For instance, in *Binder v. Comm'r of Soc. Sec.*, No. 3:17-cv-1024-J-PDB, 2019 WL 1397923, *3 (M.D. Fla. Mar. 28, 2019), we held the ALJ properly accounted for stress as a trigger for headaches by expressly linking migraines to the limitation of performing unskilled sedentary work with physical limits and no more than occasional and superficial contact with coworkers and the public. And in *Gilbert v. Comm'r of Soc. Sec.*, No. 2:16-cv-840-FtM-CM, 2018 WL 1531914, *4 (M.D. Fla. Mar. 29, 2018), the ALJ expressly linked a limitation to unskilled work to the claimant's problems with concentration attributed to headaches, and a limitation requiring the avoidance of dangerous, moving machinery was also linked to "migraine headaches, which cause pain and dizziness."

In contrast, the ALJ in this matter neither expressly linked any of the RFC limitations to Nance's severe impairment of migraines, nor did he discuss how migraines might affect Nance's adaptability to work settings or her ability to perform job duties. In fact, the ALJ only mentioned migraines when he summarized Nance's hearing testimony that "she has suffered from migraines for the last 20 years" and "tried Botox and Imitrex and stated that the medication worked in the beginning, but she could no longer afford Botox." (Tr. 24; *see also* Tr. 42-43, 49-50, 52). The ALJ also summarized her testimony that "she was having migraines every other week despite taking [Imitrex]" and "her migraines could last up to two weeks and would prevent [her] from doing anything all day long." (Tr. 25). Apart from the summary of Nance's testimony, the decision does not provide information regarding what limitations the ALJ ultimately attributed to the migraine headaches. Nor does the decision provide any indication that Nance's testimony regarding migraine-related symptoms and impairments was specifically discredited.

The RFC includes a limitation that Nance "must avoid concentrated exposure to hazards such as machinery and heights." (Tr. 23). But the ALJ made no effort to connect this limitation to Nance's migraine impairment, nor is it obvious that it is a migraine-related impairment. *See Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, *3 (M.D. Fla. May 20, 2016) (finding ALJ erred by failing to articulate how severe migraine impairment was accounted for in physical RFC that

10

included among other limitations, no concentrated exposure to hazards such as machinery or heights), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, No. 8:15-cv-339-T-33TGW, 2016 WL 3258423 (M.D. Fla. June 14, 2016).

The ALJ found migraines were a severe impairment at step two. (Tr. 23). So, the ALJ "needed to articulate what [Nance's] significant limitations were from that impairment, or if there were not any such limitations, state that the headaches were a non-severe impairment. The [ALJ] cannot have it both ways." *Battles*, 2016 WL 3360428, at *3; *see also Reis ex rel. Reis v. Astrue*, No. 8:11-cv-2027-T-TGW, 2012 WL 3231092, *4 (M.D. Fla. Aug. 6, 2012) ("The problem here is that the [ALJ] seemed skeptical of the plaintiff's claim of migraine headaches [] but he nevertheless found that it was a severe impairment. Having made that finding, the [ALJ] needed to articulate what the plaintiff's significant limitations were from that impairment and reasonably explain to what extent the plaintiff could work despite the limitations.").

The court should not be left to "speculate about the functional impact of [Nance's] migraine headaches or whether such was fairly a part of the RFC assessment made by the ALJ." *Towner v. Astrue*, 8:11-cv-2258-T-30TBM, 2012 WL 6699627, *6 (M.D. Fla. Dec. 5, 2012), *report and recommendation adopted*, No. 8:11-cv-2258-T-30TBM, 2012 WL 6699617 (M.D. Fla. Dec. 26, 2012). When

placed in such a position, we routinely remand for further consideration. *Mancini v. Comm'r of Soc. Sec.*, No. 2:19-cv-798-JLB-NPM, 2021 WL 1090826, *8-9 (M.D. Fla. Feb. 22, 2021), *report and recommendation adopted*, No. 2:19-cv-798-JLB-NPM, 2021 WL 1087270 (M.D. Fla. Mar. 22, 2021); *Dial v. Comm'r of Soc. Sec.*, No. 6:19-cv-1005-Orl-LRH, 2020 WL 5513338, *5 (M.D. Fla. Sept. 14, 2020); *Hill v. Saul*, No. 8:19-cv-121-T-TGW, 2020 WL 1430917, *4 (M.D. Fla. Mar. 24, 2020); *Gurske v. Comm'r of Soc. Sec.*, No. 6:17-cv-2050-Orl-DNF, 2019 WL 643722, *3 (M.D. Fla. Feb. 15, 2019); *Battles*, 2016 WL 3360428, at *3; *Reis*, 2012 WL 3231092, at *4; *Towner*, 2012 WL 6699627, at *6. The Eleventh Circuit has ruled in similar fashion. *See Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) (reversing denial of disability benefits because the ALJ found IBS to be a severe impairment, but "the ALJ's analysis fails to discuss how IBS might affect [the claimant's] ability to perform her job duties").

In short, remand is necessary "because the ALJ did not meaningfully conduct the proper legal analysis about the effect of [Nance's migraines] on her RFC." *Raduc*, 380 F. App'x at 899.

## C.    Nance's remaining arguments

Nance's remaining issues focus on whether the ALJ properly evaluated: Nance's tenosynovitis; the opinions of Dr. Mardo, FNP-C Griffith, and FNP-BC Isom; and Nance's subjective complaints. Nance also argues remand is warranted

because the Appeals Council should have granted her request for review based on the submission of previously missing records that purportedly presented a reasonable probability the ALJ would have arrived at a different outcome. (Tr. 684-703) (Doc. 27). Because the Court finds that remand is warranted on the migraine issue, the disposition of the remaining issues would, at this time, be premature. On remand, the ALJ will have the benefit of reviewing the previously missing records and will reevaluate Nance's application.

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the decision of the Commissioner is not supported by substantial evidence.

It is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on September 22, 2021.


_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE